## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ISRAEL ORTIZ** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **NO.  23-4578** |
| | : | |
| **CITY OF PHILADELPHIA,** | : | |
| **PHILADELPHIA DEPARTMENT OF** | : | |
| **PRISONS, CURAN-FROMHOLD** | : | |
| **CORRECTIONAL FACILITY,** | : | |
| **COMMISSIONER OF PHILADELPHIA** | : | |
| **DEPARTMENT OF PRISONS** | : | |
| **BLANCHE CARNEY, WARDEN** | : | |
| **NANCY GIANETTA, WARDEN** | : | |
| **ROBERT ROSE, OFFICER JOHN DOE** | : | |
| **CALDWELL, OFFICER JOHN DOE** | : | |
| **PETERS, SERGEANT JOHN DOE** | : | |
| **LECA, JOHN AND JANE DOES #1-10** | : | |

## <u>MEMORANDUM</u>

**MURPHY, J.**                                                          **September 4, 2025**

This matter arises from a fight that occurred between two inmates in the general
population unit at Philadelphia Industrial Correctional Center.  Israel Ortiz, the plaintiff,
attempted to break up the fight and was seriously injured in the process.  He asserts that one of
the individuals in the fight, Bashir Matthews, should not have been in the general population unit
in the first place; he was there because Correctional Officer Michelle Caldwell had let him out of
punitive segregation to get water.  After three amended complaints and a stipulation, Mr. Ortiz
pursues only an Eighth Amendment failure-to-protect claim against CO Caldwell.  While we
acknowledge that Mr. Ortiz was seriously injured, not all such incidents, even those resulting
from dangerous situations, are actionable under the Eighth Amendment.  Mr. Ortiz has not
adduced sufficient evidence to demonstrate the required substantial risk of harm and knowing
disregard for his safety.  Thus, we must grant summary judgment in favor of defendants.

## I.    FACTS[1] AND PRODEDURAL HISTORY

On November 27, 2021, the plaintiff, Israel Ortiz, was incarcerated at Philadelphia Industrial Correctional Center (PICC) in Philadelphia, Pennsylvania.  *See* DI 41-1 ¶¶ 1-2.  Mr. Ortiz was in the general population unit, where inmates wear blue clothing.  DI 42 at 12; DI 42-5 at 22:4-5.

According to Mr. Ortiz, Correctional Officer (CO) Michelle Caldwell, a defendant, let inmate Bashir Matthews into the general population unit to get some water.  DI 42 at 12; DI 42-5 at 22:10-11.  Mr. Ortiz testified at his deposition that Mr. Matthews was wearing an orange jumpsuit because he had "got[ten] a write-up" for flooding his cell on November 25.  DI 42-5 at 15:5-12; *see* DI 42-2 at 9 (ECF).  He testified that Mr. Matthews should have been in punitive segregation for the cell-flooding incident and not in the general population unit.  DI 42-5 at 15:13-16.[2]  Mr. Ortiz did not complain to any CO about Mr. Matthews being in the general population unit.  *Id.* at 17:9-12; DI 41-1 ¶ 17.  He testified that CO Caldwell was a rookie during this time and had been working for only a couple of months.  DI 42-5 at 25:7-12.

Mr. Matthews and Jalil Harris, Mr. Ortiz's cellmate, started fighting in the dayroom of the general population unit.  DI 41-1 ¶¶ 1-2.  According to Mr. Ortiz, the fight occurred because the water from the November 25 cell-flooding incident had "messed up a lot of stuff" in Mr.

---

[1] We derive these facts from defendants' statement of facts, if undisputed by Mr. Ortiz, and otherwise from Mr. Ortiz's statement of facts and exhibits.  *See* DI 41-1; DI 42-1; DI 43-1. To the extent there is a genuine factual dispute supported by the record, we adopt Mr. Ortiz's version of events.

[2] Defendants dispute that Mr. Matthews was in punitive segregation.  They attach an affidavit from Deputy Warden Charles Hamer stating that Mr. Matthews would not have been placed in punitive segregation for flooding his cell.  DI 41-1 ¶ 15; DI 41-6.

Harris and Mr. Ortiz's cell.  DI 42-5 at 25:18-22.   Mr. Ortiz tried to break up the fight.  DI 41-1 ¶ 4.  In the process, he and Mr. Matthews tumbled over and fell on the floor; Mr. Ortiz's leg "kind of . . . snapped."  *Id.*  CO Caldwell called local response and used pepper spray on Mr. Matthews and Mr. Harris.  *Id.* ¶ 6.  Sergeants Anthony Black and Jay Leca, also defendants, responded to the unit to assist CO Caldwell.  *Id.* ¶ 18.  Mr. Ortiz was sent to Jefferson-Torresdale Hospital and diagnosed with a right tibia / fibula fracture and a fracture of his fifth metacarpal bone on his right hand.  *Id.* ¶¶ 9-11.

Mr. Matthews's prior misconduct history includes two fighting incidents that occurred in 2018 at Curran-Fromhold Correctional Facility (CFCF), and a charge for refusing to go into his cell and assaulting an officer in February 2021, which was dismissed.  DI 42-2 at 1-2, 8 (ECF).  From 2019 through 2021, he was also written up for refusing to comply with orders, "popp[ing] out of his cell," possessing a note that referenced purchasing cigarettes and suboxone, refusing to go into his cell, and flooding his cell.  *Id.* at 3-9 (ECF).[3]

On May 24, 2024, Mr. Ortiz filed a Third Amended Complaint (TAC) that asserts one count of bystander liability under 42 U.S.C. § 1983 against CO Caldwell, Sergeant Black, Sergeant Leca, Officer Dionte Peters and Jane and John Does #1-10.  DI 32.  During discovery, plaintiff's counsel requested video footage of the incident.  Though an incident report from November 27 states that "the video and video review is included with this report," DI 42-3 at 2 (ECF), defense counsel stated that the video was "nowhere to be found," DI 42-6 at 1 (ECF).

---

[3] Some of these charges were sustained and others were dismissed.  *See* DI 42-2 at 1-9 (ECF).

## II.    MOTION AT ISSUE

The parties agree that Officer Peters and Jane and John Does #1-10 were never served and should be dismissed from the case.  *See* DI 49 at 10:2-8, 35:3-13.  CO Caldwell, Sergeant Black, and Sergeant Leca move for summary judgment.[4]  They assert that Mr. Ortiz's bystander liability claim is best understood as an Eighth Amendment failure-to-protect claim.  DI 41 at 2.  Operating under the failure-to-protect standard, they argue that Mr. Ortiz has failed to show any personal involvement of Sergeants Black and Leca; as for CO Caldwell, he has not adduced evidence of a substantial risk of serious harm or deliberate indifference.  *Id.* at 6-11.

In response, Mr. Ortiz stipulates that Sergeants Black and Leca should be dismissed for lack of personal involvement.  DI 42 at 16-17.  But he argues that he may sustain an Eighth Amendment failure-to-protect claim against CO Caldwell and that the lack of video footage "raises significant questions of fact."  *Id.* at 10-16.   Defendants reply that the unavailable video does not create a material factual dispute.  DI 43 at 2.

## III.    STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "Genuine issues of material fact refer to any reasonable disagreement over an outcome-determinative fact."  *In re Energy Future Holdings Corp.*, 990 F.3d 728, 737 (3d Cir. 2021).  When considering a motion for summary judgment, we must "view the record and draw inferences in a light most favorable to the non-moving party."  *In re Ikon Off. Sols., Inc.*, 277 F.3d 658, 666 (3d Cir. 2002).  We ask "if the evidence is such that a reasonable jury could return

---

[4] We held oral argument on the motion for summary judgment on January 9, 2025.  *See* DI 49.

4

a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

"If a non-moving party fails to make a showing sufficient to establish the existence of an element

essential to that party's case on which it bears the burden of proof at trial, there is no issue as to a

genuine issue of a material fact." *In re Ikon*, 277 F.3d at 666.  To overcome summary judgment,

"[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be

insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."

*Anderson*, 477 U.S. at 252.

## IV.    ANALYSIS

The sole claim at issue is Mr. Ortiz's Eighth Amendment failure-to-protect claim against

CO Caldwell.  Construing the facts in Mr. Ortiz's favor, a reasonable jury could not find liability.

### A. Mr. Ortiz did not demonstrate a substantial risk of serious harm and deliberate indifference.

The Eighth Amendment imposes "a duty upon prison officials to take reasonable

measures 'to protect prisoners from violence at the hands of other prisoners.'" *Hamilton v.*

*Leavy*, 117 F.3d 742, 746 (3d Cir. 1997) (quoting *Farmer v. Brennan*, 511 U.S. 825, 833 (1994)).

To establish a failure-to-protect claim, a plaintiff must demonstrate that: (1) he is "incarcerated

under conditions posing a substantial risk of serious harm"; (2) the prison official acted with

"deliberate indifference" to his health and safety; and (3) causation.  *Farmer v. Brennan*, 511

U.S. 825, 834 (1994); *Hamilton*, 117 F.3d at 746.   The first element entails an objective inquiry;

a plaintiff must show a risk of harm that is "objectively sufficiently serious." *Hamilton*,

117 F.3d at 746 (internal quotations omitted).  Deliberate indifference is a subjective inquiry.  *Id.*

at 747.  To be deliberately indifferent, a prison official must both "know[] of and disregard[] an

excessive risk to inmate health or safety," meaning that "the official must both be aware of facts

from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 746 (quoting *Farmer*, 511 U.S. at 837); *see Beers-Capital v. Whetzel*, 256 F.3d 120, 133 (3d Cir. 2001) (defining deliberate indifference). "[S]ubjective knowledge on the part of the official can be proved by circumstantial evidence to the effect that the excessive risk was so obvious that the official must have known of the risk." *Beers-Capitol*, 256 F.3d at 133.

Mr. Ortiz has adduced limited evidence of a substantial risk of serious harm. The parties dispute whether Mr. Matthews was in general population or punitive segregation on November 27. *See* DI 42 at 12; DI 41-6. For purposes of summary judgment, we accept Mr. Ortiz's testimony that Mr. Matthews "was placed in an orange jumpsuit" and "wasn't supposed to be on the [general population] unit." DI 42-5 at 14:24-15:9. But even if Mr. Matthews were in punitive segregation, there is a lack of evidence showing that his presence on the general population unit created an "objectively intolerable risk of harm." *Beers-Capital*, 256 F.3d at 132 (quoting *Farmer*, 511 U.S. at 846).

First, there are no facts in the record showing that those in punitive segregation necessarily pose an objective risk of harm to others. Second, Mr. Ortiz offers only a tenuous connection between the cell-flooding incident and any risk of harm. There is no evidence that inmates who flood cells are necessarily dangerous. Rather, Mr. Ortiz argues that Mr. Matthews's presence posed a danger because the cell-flooding incident led to "animosity among the inmates." DI 42 at 12. The only evidence supporting this point is Mr. Ortiz's testimony that "when you flood a cell, it goes into everybody else's cells next to you," and that "[the November 25 incident] had messed up a lot of stuff that was in [Ortiz and Harris's cell] like clothes, food."

DI 42-5 at 25:18-22.  It would require speculation rather than a reasonable inference to jump from those observations to an objective risk of harm.

Finally, Mr. Matthews's murder charge and misconduct record do not, without more, mean that he posed a substantial risk of serious harm to others.  In addition to several non-violent charges (some of which were dismissed), Mr. Matthews's misconduct history includes two fighting incidents that occurred over three years before the incident at issue, at a different but adjacent facility, and an assault charge that was dismissed.  DI 42-2 at 1-2, 8 (ECF); *see* DI 49 at 11:15-18.  This history is insufficient to show a substantial risk to Mr. Ortiz's safety in November 2021.  *See Reed v. Harpster*, 506 F. App'x 109, 112 (3d Cir. 2012) (prison misconduct record showing "only two prior acts of violence elsewhere" was not sufficient to show a substantial risk to plaintiff's safety).  And it cannot be the case that any inmate facing a serious, violent charge, such as murder, necessarily poses an objectively intolerable risk of harm to other inmates in his physical presence.

Even if a brewing "animosity" and Mr. Matthews's misconduct history were sufficient to create a substantial risk of serious harm, there is no evidence that CO Caldwell acted with deliberate indifference.  Mr. Ortiz does not demonstrate that CO Caldwell knew of and disregarded[5] an excessive risk to inmate safety.  He provides no evidence that all inmates in punitive segregation were deemed dangerous so that all staff, including CO Caldwell, knew that

---

[5] Mr. Ortiz argues that "[w]hether defendants knew or should have known about Matthews' violent tendencies is a factual question that must be resolved by the jury."  DI 42 at 17.  But "should have known" is not the operative standard.  *See Farmer*, 511 U.S. at 838 ("[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.").

they posed a serious risk of harm to others.   He asserts, without evidentiary support, that COs "h[ad] access" to Mr. Matthews's misconduct reports, DI 42 at 13, but there is nothing in the record showing that CO Caldwell knew about Mr. Matthews's prior fighting incidents at CFCF. In fact, Mr. Ortiz testified that CO Caldwell was "a rookie . . . when this all happened" and had only been working for a couple of months.  DI 42-5 at 25:7-12.  And Mr. Ortiz stated at his deposition that he never complained to CO Caldwell, or anyone else, about Mr. Matthews being on the unit.  *Id.* at 17:9-12, 26:3-12.  Those undisputed facts work against the inferences Mr. Ortiz asks us to draw.

This is not the situation described in *Farmer* where a jury could infer from circumstantial evidence that CO Caldwell "must have known" about the risk of harm simply because it was so obvious.  *See Farmer*, 511 U.S. at 842.  Mr. Ortiz has adduced no evidence that a "substantial risk" of attack by Mr. Matthews was "longstanding, pervasive, well-documented, or expressly noted by prison officials," or that CO Caldwell "had been exposed to information concerning the risk."  *Id.*  Even if animosity were brewing between Mr. Matthews and Mr. Harris, there is no evidence that CO Caldwell knew, or "must have known," about it.  *See Blackstone v. Thompson*, 568 F. App'x 82, 84 (3d Cir. 2014) (affirming grant of summary judgment even when the plaintiff did complain that he was not "getting along" and did not "feel comfortable" with his cellmate because there was no evidence that defendant "made the inference that an excessive risk was present," nor "any indication . . . that [plaintiff] told [defendant] of any specific incident or cause of tension . . . from which a greater inference of risk could be drawn").

**B.  The unavailable video does not create a factual dispute.**

The unavailability of video footage of the November 27 incident does not create a factual dispute sufficient to overcome summary judgment.  Mr. Ortiz does not formally request, nor has he developed a sufficient record for, an adverse inference for spoliation of evidence.  *See Schmid v. Milwaukee Elec. Tool Corp.*, 13 F.3d 76, 78 (3d Cir. 1994) (describing the "spoliation inference"); DI 49 at 22:10-23:17.  Mr. Ortiz mainly argues that the video would create a genuine factual dispute because it would "corroborate" his account.  DI 42 at 15.  Maybe so, but on summary judgment, we already view the record in the light most favorable to Mr. Ortiz.  Even accepting Mr. Ortiz's version of events as true, he has not provided sufficient evidence to prove a failure-to-protect claim against CO Caldwell.  A video corroborating Mr. Ortiz's version of events would not affect our analysis.

## V.    CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment is granted. An appropriate order follows.

9